IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHAEL HELPLING, RYAN
DIEDRICH, and JEFFREY
TAYLOR, on behalf of themselves
and all others similarly situated,

               **Plaintiffs,**

    **v.**

RHEEM MANUFACTURING
COMPANY,

               **Defendant.**

                        **1:15-cv-2247-WSD**

## OPINION AND ORDER

This matter is before the Court on Defendant Rheem Manufacturing

Company's ("Rheem") Motion to Dismiss Class Action Complaint [14] ("Motion

to Dismiss"). Also before the Court is Plaintiffs Michael Helpling, Ryan Diedrich,

and Jeffrey Taylor's (together, "Plaintiffs") Motion for Leave to File Response to

Defendant's Notice of Supplemental Authority [23].

## I. BACKGROUND

### A. Facts

This putative class action arises from alleged defects in thermal expansion

valves ("TXVs") contained in air conditioning units manufactured by Rheem (the

"Rheem Units").  Plaintiffs Michael Helpling and Ryan Diedrich are contractors, in Ohio and Florida, respectively, who installed and distributed Heating, Ventilation and Air Conditioning ("HVAC") systems manufactured by Rheem.  Mr. Helpling and Mr. Deidrich allege they incurred expenses in repairing their customers' defective Rheem Units.  (Compl. [1] ¶¶ 26-27).  Plaintiff Jeffrey Taylor, a Georgia citizen, purchased a Rheem Unit that later failed.  Mr. Taylor alleges he incurred costs related to his Rheem Unit's failure.  (Id. ¶ 28).

Plaintiffs allege that the defect in Rheem Units arises from mechanical or chemical impurities that clog the TXVs, causing premature failure of the equipment and requiring consumers and contractors to incur costs to repair the defect.  Plaintiffs allege that Rheem sold the equipment to contractors and consumers "despite knowing about these manufacturing defects and the widespread TXV failures that would result, and has failed to reimburse consumers and contractors the full amount of labor and other costs necessary to remedy the defect."  (Id. ¶ 1).

In recent years, manufacturers of HVAC equipment have adopted a new industry standard in commercial and residential refrigerants, called R-410A.  (Id. ¶ 2).  HVAC equipment that utilizes the new R-410A refrigerant requires synthetic oil to lubricate the compressor.  (Id. ¶ 4).  Most manufacturers, including Rheem,

2

use synthetic oils called Polyolester ("POE") oils.  (Id.).  POE oils, however, are solvents and, when exposed to moisture and heat, may react with contaminants, forming acid that is harmful to HVAC systems.  (See id. ¶¶ 6-7).  Because POE oil has these properties, special care must be used during the manufacturing process to ensure that no contaminants remain in the equipment that could react with the POE oil.  (Id. ¶ 7).

Manufacturers of HVAC equipment also have, in recent years, begun using TXVs, which are precision devices designed to regulate the flow rate of refrigerant liquid.  (Id. ¶ 9).  TXVs are a "bottleneck" in the HVAC system—meaning that contaminants or impurities that may flow through the system are likely to collect around the TXV pin.  (Id. ¶ 10).  If contaminants collect on the TXV pin, it may cause the TXV to operate inefficiently, or cause the system to stop functioning. (Id.).

Plaintiffs allege that Rheem knew that the use of 410A refrigerant and POE oil required significant care during the manufacturing of component parts to ensure the absence of contaminants or impurities.  (Id. ¶ 11).  They also allege that use of TXVs required care to ensure the TXVs would function as intended.  (Id.). Plaintiffs allege that Rheem failed to attend to these known risks.  Plaintiffs allege that, beginning at least as early as 2013, the new HVAC systems manufactured by

Rheem were failing in "alarming numbers," and that diagnostic assessments from contractors who conducted repairs indicated widespread TXV failures.  (Id.). Plaintiffs allege that the failures were a result of contaminants left by manufacturing processes that caused the TXVs to "get stuck or fail to operate properly."  (Id.).

Plaintiffs allege that Rheem generally provided replacement TXVs under Rheem's warranty, "but refused to pay the significant labor and material costs involved in replacing the TXVs or otherwise remedy the underlying defect."  (Id. ¶ 12).  Plaintiffs further allege,

> [S]ince labor is not covered under Rheem's warranty, either the consumer was forced to bear the substantial labor and materials costs, or, more often than not, the contractor who installed the brand-new system just weeks or months previously was forced to replace the TXV at their own expense, or else risk serious reputational detriment to their business.

(Id.).  "At best, Rheem is offering partial reimbursement of labor costs in limited circumstances and for a limited time period, which is insufficient to cover the actual labor involved in replacing a stuck TXV."  (Id. ¶¶ 16, 21).  Plaintiffs allege that Rheem has recently been instructing some contractors to inject defective Rheem Units with a chemical called "A/C Re-new," which Plaintiffs claim generally voids a manufacturer's warranty on equipment.  (Id. ¶ 17).

Plaintiffs allege that Rheem Units are sold with a ten-year limited parts warranty (the "Warranty").  (Id. ¶ 21).  Rheem attached to its Motion to Dismiss a copy of its Warranty.[1]  (Motion to Dismiss, Ex. A).  The Warranty provides:

> RHEEM SALES COMPANY, INC. . . . warrants the Covered Equipment to be free from defects in materials and workmanship, and will repair or replace, at its option, ANY PART of Covered Equipment installed in residential (not commercial) applications which fails in normal use and service within the Applicable Warranty Periods[.]
>
> . . .
>
> [RHEEM'S] SOLE LIABILITY WITH RESPECT TO DEFECTIVE PARTS OR FAILURE SHALL BE AS SET FORTH IN THIS LIMITED WARRANTY, AND ANY CLAIMS FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES ARE EXPRESSLY EXCLUDED.

(Id.)  According to Plaintiffs, Rheem's Warranty does not provide coverage for labor or incidental material costs, such as the cost of replacing refrigerant in connection with replacing a TXV.  (Compl. ¶ 21).[2]

---

[1]     Plaintiffs do not dispute that the Court may consider the terms of the Warranty in connection with the Motion to Dismiss, but state that they do not have sufficient information to confirm that the Warranty attached to Rheem's Motion to Dismiss is a true and correct copy of the actual warranty.  (Resp. [15] at 8 n.2).  Plaintiffs assume, without conceding, that it is a true and correct copy.

[2]     The Court sets out additional facts below.

B.    Procedural History

On June 22, 2015, Plaintiffs filed their Complaint.  In it, Plaintiffs purport to bring this lawsuit on behalf of a nationwide class of purchasers of Rheem Units and contractors who have not been fully reimbursed for parts or labor costs for diagnosing or servicing Rheem Units with defective TXVs.  (Id. ¶ 57).  The Complaint also assert statutory claims on behalf of classes of consumers and contractors from Ohio (represented by Plaintiff Helpling), Florida (represented by Plaintiff Diedrich), and Georgia (represented by Plaintiff Taylor).

The Complaint raises sixteen counts:  (1) Violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 et seq.; (2) Negligence; (3) Negligent Failure to Warn; (4) Unjust Enrichment; (5) Punitive Damages under O.C.G.A. § 51-12-5.1; (6) Expenses of Litigation under O.C.G.A. § 13-6-11; (7) Violation of the Ohio Deceptive Trade Practices Act ("ODTPA"), O.R.C. § 4165.01, et seq.; (8) Violation of the Ohio Consumer Sales Practices Act ("OCSPA"), O.R.C. §1345.01, et seq.; (9) Breach of Express Warranty, O.R.C. § 1302.26, et seq. (U.C.C. § 2-313); (10) Breach of Implied Warranty of Merchantability, O.R.C. § 1302.27, et seq. (U.C.C. § 2-314); (11) Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, et seq.; (12) Breach of Express Warranty, Fla. Stat. § 672.313;

(13) Breach of Implied Warranty of Merchantability, Fla. Stat. § 672.314; (14) Violation of Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"), O.C.G.A. § 10-1-370 et seq.; (15) Breach of Express Warranty, O.C.G.A. § 11-2-313; and (16) Breach of Implied Warranty of Merchantability, O.C.G.A. § 11-2-314.

On August 20, 2015, Rheem filed its Motion to Dismiss.  Rheem contends that Plaintiffs' breach of warranty claims (Counts 1, 9, 10, 12, 13, 15, and 16) must be dismissed because Plaintiffs have not alleged an actionable breach of warranty, including because Plaintiffs allege that Rheem complied with their limited Warranty, and because Plaintiffs Helpling and Diedrich do not have standing to assert certain breach of warranty claims.  (Mot. to Dismiss at 3).  Rheem argues that Plaintiffs' ODTPA claim fails because its provisions do not apply to the conduct alleged in the Complaint.  (Id.).  Rheem also argues that Plaintiffs' OCSPA, FDUTPA, and GUDTPA claims fail because, among other reasons, Plaintiffs do not allege any facts suggesting how Rheem's alleged conduct caused their purported injury.  (Id.).  Rheem seeks dismissal of Plaintiffs negligence-based claims, arguing they are barred by Georgia's economic loss rule.  (Id. at 4).  Rheem next argues Plaintiffs' unjust enrichment claim must be dismissed because Plaintiffs cannot allege that a benefit was conferred upon Rheem or that Rheem

knew about such a conferred benefit.  (<u>Id.</u>).  Finally, Rheem argues that Plaintiffs'
punitive damages and expenses claims must be dismissed, including because
Plaintiffs' substantive claims fail as a matter of law.  (<u>Id.</u>).

## II.   LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of
Civil Procedure, the Court must "assume that the factual allegations in the
complaint are true and give the plaintiff[] the benefit of reasonable factual
inferences."  <u>Wooten v. Quicken Loans, Inc.</u>, 626 F.3d 1187, 1196 (11th Cir.
2010).  Although reasonable inferences are made in the plaintiff's favor,
"'unwarranted deductions of fact' are not admitted as true."  <u>Aldana v. Del Monte
Fresh Produce, N.A.</u>, 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting <u>S. Fla. Water
Mgmt. Dist. v. Montalvo</u>, 84 F.3d 402, 408 n.10 (11th Cir. 1996)).  Similarly, the
Court is not required to accept conclusory allegations and legal conclusions as true.
<u>See</u> <u>Am. Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283, 1290 (11th Cir. 2010)
(construing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009); <u>Bell Atl. Corp. v. Twombly</u>,
550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
<u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).  Mere "labels and

conclusions" are insufficient.   Twombly, 550 U.S. at 555.  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  This requires more than

the "mere possibility of misconduct."  Am. Dental, 605 F.3d at 1290 (quoting

Iqbal, 556 U.S. at 679).  The well-pled allegations must "nudge[] their claims

across the line from conceivable to plausible."  Id. at 1289 (quoting Twombly, 550

U.S. at 570).

## III.   ANALYSIS

### A.   Warranty Claims

Rheem argues that Plaintiffs Helpling and Diedrich do not have standing to

assert claims for breach of warranty under Counts 9, 10, 12, and 13.  Rheem argues

also that Plaintiffs failed to plead privity between Plaintiffs and Rheem, which

provides an independent basis for dismissal of Counts 10, 13, and 16.  Rheem next

argues that Plaintiffs' breach of warranty claims (Counts 1, 9, 10, 12, 13, 15, and

16) must be dismissed, because Plaintiffs have not alleged an actionable breach of

warranty.  Rheem contends that, because Plaintiffs have not pled a breach of the

Warranty, they are limited to the sole remedy provided by the Warranty's valid and

enforceable limitation of liability.  Finally, Rheem maintains that, because

Plaintiffs' state-law breach of warranty claims fail, Plaintiffs lack standing to assert a claim for a violation of the MMWA (Count 1).

>    1.    Helpling and Diedrich's Standing to Assert Counts 9, 10, 12, and 13

Rheem argues that, because Helpling and Diedrich are contractors—and not buyers or parties to the Warranty—they do not have standing to assert breach of express warranty or breach of implied warranty claims under Ohio and Florida law. Under Florida law, "there can be no implied warranty absent a 'sale' of the product . . . [because a]n implied warranty is contractual in nature and cannot exist without a contract." McQuiston v. K-Mart Corp., 796 F.2d 1346, 1347 (11th Cir. 1986) (citing Carter v. Hector Supply Co., 128 So. 2d 390, 391 (Fla. 1961)); see also Spolski Gen. Contractor, Inc. v. Jett-Aire Corp. Aviation Mgmt. of Cent. Fla., Inc., 637 So. 2d 968, 970 (Fla. Dist. Ct. App. 1994) ("Judgment on the pleadings and final summary judgment were properly granted for [defendant] because there was no sale from [defendant] to [contractor] . . . ."). Similarly, under Ohio law, "[a]bsent a contractual relationship between the plaintiff and defendant, an action based upon contract for breach of warranty does not exist." Acme Steak Co., Inc. v. Great Lakes Mech. Co., Nos. 98-C.A.-146, 98-C.A.-243, 2000 WL 1506199, at *4 (Ohio Ct. App. Sept. 29, 2000) (quoting Lawyers Coop. Publ'g Co. v. Muething, 603 N.E.2d 969, 972 (Ohio 1992)) (granting summary judgment on

plaintiff's breach of implied warranty of merchantability claim under O.R.C. § 1302.27).

Plaintiffs argue that Rheem's warranty does not identify any promisee, and therefore Diedrich and Helpling are parties to the warranty. (See Resp. at 23). The language of the Warranty contradicts Plaintiffs' argument. The Warranty describes covered Rheem Units as those units "owned by the original purchaser." (Mot. to Dismiss, Ex. A). Plaintiffs do not allege that either Diedrich or Helpling was an original purchaser. Plaintiffs also do not allege that Diedrich and Helpling are intended beneficiaries of the Warranty, and the Warranty does not contain any language establishing that contractors are beneficiaries. Plaintiffs fail to cite any cases to support their argument that contractors who do not purchase warranted products have standing to sue for breach of warranty. The Court finds that, under Ohio and Florida law, Diedrich and Helpling lack standing to sue for breach of warranty, and Helpling and Diedrich's Counts 9, 10, 12, and 13 are required to be dismissed for this reason.

2.      Privity to Assert Counts 10, 13, and 16

Rheem next argues that Plaintiffs fail to plead the requisite privity to maintain their implied warranty claims, and that this provides an independent basis to dismiss Counts 10, 13, and 16.

"Ohio law requires privity in order to sustain a breach of implied warranty claim." Savett v. Whirlpool Corp., No. 12 CV 310, 2012 WL 3780451, at *10 (N.D. Ohio Aug. 31, 2012); see also Curl v. Volkswagen of Am., Inc., 871 N.E.2d 1141, 1147 (Ohio 2007) ("[L]ongstanding Ohio jurisprudence provides that purchasers . . . may assert a contract claim for breach of implied warranty only against parties with whom they are in privity.  Having reviewed the authority in Ohio, as well as that of other jurisdictions, we see no compelling reason to stray from precedent.")

"It is well established law in Florida that warranty-based claims, including breach of express warranty, require privity of contract between the parties." Kaiser v. Depuy Spine, Inc., 944 F. Supp. 2d 1187, 1193 (M.D. Fla. 2013); see also Hawaiian Airlines, Inc. v. AAR Aircraft Servs., Inc., —— F. Supp 3d. ——, ——, 2016 WL 867116, at *6 (S.D. Fla. Mar. 7, 2016) ("Express—and implied warranty-based claims require privity of contract between the parties.").

Similarly, under Georgia law, "a plaintiff who does not plead facts that allow the court to infer that he is in privity with the defendant or part of the statutory class of protected persons fails to state a claim for breach of an express or implied warranty." Edwards v. Wis. Pharmacal Co., LLC, 987 F. Supp. 2d 1340, 1346 (N.D. Ga. 2013) (citing Bryant v. Hoffmann-La Roche, Inc., 585 S.E.2d 723,

731 (Ga. Ct. App. 2003)).  In Georgia, a warranty of merchantability "clearly arises out of a contract of sale of goods, [and] can only run to a buyer who is in privity of contract with the seller."  Chaffin v. Atlanta Coca Cola Bottling, Co., 194 S.E.2d 513, 515 (Ga. Ct. App. 1972); see also Monticello v. Winnebago Indus., Inc., 369 F. Supp. 2d 1350, 1361 (N.D. Ga. 2005) (granting summary judgment to manufacturer where plaintiff purchased RV from a dealer that was not a party to the action); Keaton v. A.B.C. Drug Co., 467 S.E.2d 558, 560-61 (Ga. Ct. App. 1996) ("Georgia law establishes that in order to recover under a theory of breach of implied warranty of merchantability, a plaintiff must have privity with the seller."); Cobb Cty. Sch. Dist. v. MAT Factory, Inc., 452 S.E.2d 140, 145-46 (Ga. Ct. App. 1994) (stating that if a defendant is not the seller to the plaintiff-purchaser, the plaintiff cannot recover on the implied warranty arising out of the prior sale by the defendant to an original purchaser, such as the distributor or retailer from whom plaintiff purchased the product).

Plaintiffs claim that Ohio and Florida law allows Plaintiffs to bring a breach of implied warranty claim because they are third-party beneficiaries.  In Savett, the Northern District of Ohio considered this same argument, and found that, "[g]iven the privity requirement," plaintiffs' "bare allegation" that they were "intended— not merely incidental—third-party beneficiaries" was "insufficient to allege a

breach of implied warranty claim."  2012 WL 3780451, at *10.  Here, Plaintiffs fail even to make the bare allegation that they are intended third-party beneficiaries.  The Complaint does not allege where, from whom, or how Plaintiffs obtained their Rheem Units.  Plaintiffs thus fail to allege they are in privity with Rheem, or that they are intended third-party beneficiaries that could bring an implied warranty claim under Ohio or Florida law.

Plaintiffs argue that, under Georgia law, where an express warranty exists, privity is established and claims can also be asserted for implied warranties of merchantability.  (Resp. at 24-25).  In support of their argument, Plaintiffs rely on Chrysler Corp. v. Wilson Plumbing Co., Inc., 208 S.E.2d 321, 323 (Ga. Ct. App. 1974).  In Chrysler, the court stated:

> While ordinarily under [Georgia law] there is no implied warranty existing between a manufacturer and an ultimate consumer, this is due to the fact that no privity of contract exists between the two. However, where an automobile manufacturer, through its authorized dealer issues to a purchaser of one of its automobiles from such dealer admittedly as a part of the sale a warranty by the manufacturer running to the purchaser, privity exists . . . .

208 S.E.2d at 323.[3]

---

[3]     Rheem argues that Georgia courts are split as to whether a remote purchaser can maintain an implied warranty claim against a manufacturer.  (Mot. to Dismiss at 12 n.15).  Although there exist some post-Chrysler Corp. cases in which courts did not allow a warranty to supplant privity requirements, see Monticello, 369 F.

The Court first notes that, to the extent Chrysler remains good law, it does not apply to Plaintiffs Diedrich and Helpling, because Plaintiffs do not allege that Diedrich and Helpling purchased Rheem Units, or that the Warranty runs to contractors.  As to Plaintiff Taylor, the Court finds persuasive the reasoning in In re Porsche Cars N. Am., Inc., 880 F. Supp. 2d 801 (S.D. Ohio 2012).  In Porsche, the court, applying Georgia law, considered whether Chrysler allowed plaintiff, who purchased his vehicle from a dealer, to pursue his implied warranty claim against the manufacturer.  The court noted that Chrysler held that a warranty supplants privity only in certain circumstances—"specifically, when a manufacturer issues a warranty to remote purchasers through an authorized dealer and when the warranty is part of the remote consumer's purchase."  Id. at 846.  The reasoned that,

> By acting through a dealer and by making the warranty part of the sale
> between the dealer and purchaser, the manufacturer evinces an intent
> to contract with the remote purchaser and receives consideration in the
> form of direct profits from its dealers.  The manufacturer therefore
> bridges the privity gap that would otherwise bar the remote
> purchaser's implied warranty claim.

---

Supp. 2d at 1360-61 (N.D. Ga. 2005) and Whitehead v. John Bleakley RV Ctr., Inc., No. 1:09-cv-468-TWT, 2010 WL 925091, at *7 (N.D. Ga. Mar. 8, 2010), neither of these courts cited Chrysler Corp. or appear to have directly confronted this argument.  See In re Porsche Cars N. Am., Inc., 880 F. Supp. 2d 801, 845 n.13 (S.D. Ohio 2012).

Id.  The Porsche court found that the plaintiff did not allege any facts suggesting that he purchased his vehicle from a Porsche-authorized dealer, or that the unidentified seller incorporated the warranty at issue into his purchase of the vehicle.  Id.  The court thus dismissed plaintiff's implied warranty claim.  Id.

The same reasoning applies here.  Plaintiffs, as in Porsche, fail to allege that Taylor purchased his Rheem Unit from a Rheem-authorized dealer.  Indeed, Plaintiffs do not allege any facts regarding any of Plaintiffs' supposed purchases of Rheem Units.  The Complaint does not allege where, from whom, or how Plaintiffs obtained their Rheem Units.  Georgia's general privity rule therefore applies, and Plaintiffs are barred from pursuing their implied warranty claims under Georgia law.

Because Plaintiffs fail to allege they are in privity with Rheem, Plaintiffs' claims for breach of implied warranty—Counts 10, 13, and 16—are required to be dismissed. [4]

---

[4]    Though Rheem does not raise the issue, the Court notes that, as stated above, Florida and Georgia law provide that a lack of privity bars claims for breach of *express* warranty as well.  This rule provides an independent basis for the Court to dismiss Plaintiffs' claims for breach of express warranty under Florida and Georgia law (Counts 12 and 15).

3.     Breach of Express Warranty – Counts 9, 12, and 15

Rheem next argues that Plaintiffs cannot state a claim for breach of warranty

under any theory because, according to Plaintiffs' own allegations, Rheem

complied with the Warranty's enforceable limited remedy and did not refuse to

honor any Warranty claim.  (Mot. to Dismiss at 11).

The Warranty provides:

RHEEM SALES COMPANY, INC. . . . warrants the Covered
Equipment to be free from defects in materials and workmanship, and
will repair or replace, at its option, ANY PART of Covered
Equipment installed in residential (not commercial) applications
which fails in normal use and service within the Applicable Warranty
Periods[.]

. . .

[RHEEM'S] SOLE LIABILITY WITH RESPECT TO DEFECTIVE
PARTS OR FAILURE SHALL BE AS SET FORTH IN THIS
LIMITED WARRANTY, AND ANY CLAIMS FOR INCIDENTAL
OR CONSEQUENTIAL DAMAGES ARE EXPRESSLY
EXCLUDED.

(Id. at Ex. A).  According to Plaintiffs, Rheem's Warranty does not provide

coverage for labor or incidental material costs, such as the cost of replacing

refrigerant in connection with replacing a TXV.  (Compl. ¶ 21).

Under Georgia law, "a written warranty that provides for repair or

replacement of parts imposes two conditions to recovery for breach of warranty."

Monticello, 369 F. Supp. 2d at 1356 (citing McDonald v. Mazda Motors of Am.,

Inc., 603 S.E.2d 456, 460 (Ga. Ct. App. 2004)). "First, a plaintiff must show that the warrantor had notice of the defect[,]" and "[s]econd, the warrantor must have also had a reasonable opportunity to repair the defect." Id. "When the purchaser returns the product to the dealer and makes the product available for repair, *refusal* to repair, *unsuccessful* repair, or *repeated* failures of the repair constitute breach of the express warranty." Id. (emphasis in original).

Similarly, under Ohio law, a plaintiff alleging a breach of express warranty claim must demonstrate that "(i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts." Kuns v. Ford Motor Co., 543 F. App'x 572, 575-76 (6th Cir. 2013) (citing Temple v. Fleetwood Enters., Inc., 133 F. App'x 254, 268 (6th Cir. 2005)); see also 15 U.S.C. § 2310(e) ("[N]o action . . . may be brought under subsection (d) of this section for failure to comply with any obligation under any written or implied warranty . . . unless the person obligated under the warranty . . . is afforded a reasonable opportunity to cure such failure to comply.").

Florida law provides that "there can be no cause of action for breach of an express limited warranty unless the consumer can allege and prove that the

manufacturer did not comply with the limited express warranty's terms." Ocana
v. Ford Motor Co., 992 So. 2d 319, 324 (Fla. Dist. Ct. App. 2008).

Here, Plaintiffs allege generally that Rheem "provided replacement
TXVs . . . under warranty."  (Compl. ¶ 12).  As to the named plaintiffs, Plaintiffs
allege that Rheem provided Helpling a can of A/C Renew, but that, even after the
A/C Renew was applied, Helpling's customer's Rheem Unit continued to
underperform, and Helpling recently ordered a new unit for his customer.  (Id.
¶ 26).  Plaintiffs allege that Rheem agreed to send Diedrich "a $150 credit" after
advising him to add A/C Renew to a Rheem Unit Diedrich serviced.  (Id. ¶ 27).
Plaintiffs allege that Taylor's technician "injected" A/C Renew into his Rheem
Unit and "charged Taylor for his labor."  (Id. ¶ 28).

Plaintiffs' allegations show that Rheem complied with the Warranty's terms
with respect to Deidrich and Taylor, because the allegations do not show that the
Rheem Units at issue continue to have problems.  Plaintiffs do not allege that the
application of A/C Renew did not resolve the defects alleged by Diedrich and
Taylor.  The Complaint states only that A/C Renew "is marketed to squeeze a few
more years out of old systems that are on their last-legs, and ordinarily injecting
A/C Renew into a new Rheem system would void the warranty," (Compl. ¶ 54),
and that "Rheem could not and has not stated whether the A/C Re-New will have a

19

negative impact on the useful lifespan of the HVAC unit," (id. ¶ 55).  These

general allegations, however, do not sufficiently show that Rheem breached its

limited warranty, because the Complaint does not allege that Diedrich and Taylor's

Rheem Units continue to malfunction.  Plaintiffs have, at most, raised the

possibility that A/C Renew might—at some undetermined point in the future—

have a negative impact on Rheem Units.  These vague allegations fail to "nudge[]

[Plaintiffs'] claims across the line from conceivable to plausible."  Am. Dental,

605 F.3d at 1290.

    As to Helpling, the Complaint alleges only that his customer's Rheem Unit

"continued to underperform" after application of A/C Renew.  (Compl. ¶ 26).  The

case law, however, tends to allow breach of warranty claims to proceed only where

a plaintiff establishes that a warrantor is unable to remedy an alleged defect after

multiple attempts to remedy, or where a warrantor refuses to comply with the

terms of the limited warranty.  See, e.g., McDonald, 603 S.E.2d at 460-61 ("It is

the refusal to remedy within a reasonable time, or lack of success in the *attempts* to

remedy which would constitute a breach of warranty. . . .  Where the manufacturer

or dealer has had several opportunities to repair or replace and where the defect

remains, such facts create jury questions . . . ." (emphasis added) (alterations and

citations omitted)); Ocana, 992 So. 2d at 324 (finding, under Florida law, that

plaintiff failed to allege that defendant did not comply with the limited warranty where plaintiff alleged only that he had taken his vehicle to the dealer to be fixed on four occasions).  Plaintiffs do not plead any factual details regarding the purported underperformance of Helpling's customer's Rheem Unit.  Plaintiffs do not allege that Helpling's customer's Rheem Unit "continued to underperform" because of the unit's TXV or because of the application of A/C Renew.

Further, assuming the initial application of A/C Renew was inadequate to fix any alleged defect in Helpling's customer's unit, Plaintiffs do not allege that Helpling notified Rheem that the initial repair attempt was inadequate, or that Rheem, once it knew its initial repair attempt was inadequate, refused to remedy the continued defect.  See Ocana, 992 So. 2d at 324; Monticello, 269 F. Supp. 2d at 1360 ("Georgia Courts have found no breach of warranty where the plaintiff has received some repairs under warranty but fails to return to the manufacturer or its authorized dealer for a final attempt to repair.").  The Court thus finds that Plaintiffs have failed to adequately plead their claims for breach of express warranty, and Counts 9, 12, and 15 are dismissed.[5]

---

[5]     Plaintiffs also argue that the Rheem Units were not "free from defects in materials and workmanship" as warranted, and that this is an independent basis to find a breach of express warranty.  The cases Plaintiffs rely on to support this argument do not apply here.  In Allen v. Andersen Windows, Inc., 913 F. Supp. 2d

4.   Failure of Essential Purpose and Unconscionability

Plaintiffs and Rheem argue extensively whether the Warranty's limited remedy fails in its essential purpose and whether the Warranty's exclusion of consequential and other damages is unconscionable and unenforceable.  The law of all three states under which Plaintiffs purport to assert their express warranty claims permits a manufacturer to limit a buyer's remedy for breach of warranty to "repair and replacement of nonconforming goods or parts," and to make that the sole remedy available to buyers.  O.R.C. §§ 1302.29(D), 1302.29; Fla. Stat.

490 (S.D. Ohio 2012), the court addressed whether the plaintiff's express warranty claim was time-barred, and distinguished, for purposes of the statute of limitations, the obligation to "repair or replace" from the obligation to deliver non-defective products.  The statute of limitations is not at issue here, and the reasoning of Allen does not apply.  To the contrary, in Verisco, Inc. v. Engineered Fabrics Corp., 520 S.E.2d 505, 509 (Ga. Ct. App. 1999), the other case on which Plaintiffs rely, the court noted that a repair or replacement warranty:

> [C]ontemplates that the warrantor shall have an opportunity to remedy defects.  Thus the warranty is not instantly breached if the product is found on delivery . . . to have a defective part or operational deficiency.  The language of the warranty provides that in such event the manufacturer will replace or repair . . . .  It is the refusal to remedy within a reasonable time, or a lack of success in the attempts to remedy which would constitute a breach of warranty.

Id. (citing Ford Motor Co. v. Gunn, 181 S.E.2d 694 (Ga. Ct. App. 1971)).  The Court finds that the "no defects" language does not provide a separate ground for breach of warranty.  The language is followed immediately by the provision that Rheem "will repair or replace, at its option, ANY PART of Covered Equipment installed . . . which fails in normal use . . . ."  (Mot. to Dismiss, Ex. A).  The clear meaning of this standard warranty language is that, should defects arise, Rheem will repair or replace the defective components.

§§ 672.316(4), 672.719(a); O.C.G.A. §§ 11-2-316, 11-2-719.  Such a limitation of remedies for breach of an express warranty is only void where "circumstances cause an exclusive or limited remedy to fail of its essential purpose" or where the "limitation or exclusion is unconscionable."  O.R.C. §§ 1302.93(B), (C); Fla. Stat. §§ 672.719(2), (3); O.C.G.A. §§ 11-2-719(2), (3).  Where such circumstances have been established, remedies for a breach of warranty may include consequential and incidental damages.

The plain language of the statutes contemplates that a warranty's limitation of remedies can fail in its essential purpose or can be unconscionable only where a breach of warranty has first been established.  See O.R.C. §§ 1302.29(D) ("Remedies for *breach of warranty* can be limited in accordance with the provisions . . . on contractual modification of remedy."); Fla. Stat. §§ 672.316(4) (same); O.C.G.A. §§ 11-2-316(4) (same).  Even assuming, however, that Plaintiffs' allegations adequately plead breach of warranty, the Warranty's provisions do not fail their essential purpose and are not unconscionable.

Under Florida law, "[t]he 'essential purposes' exception typically has been limited to circumstances involving repeated (unsuccessful) efforts to repair a product that completely fails in its intended use."  David v. Am. Suzuki Motor Corp., 629 F. Supp. 2d 1309, 1319 n.11 (S.D. Fla. 2009); see also Parsons v. Motor

Homes of Am., Inc., 465 So. 2d 1285, 1292 (Fla. Dist. Ct. App. 1985) (where a warranty limits a remedy to repair or replacement of defective parts, but the buyer experienced repeated problems and the seller—after repeated attempts—is unable to repair the defect, the limitation causes the warranty to fail in its essential purpose).

Under Ohio law, a "limited or exclusive remedy can fail of its essential purpose if it deprives the purchaser of the substantial value of its bargain, leaving the purchaser without a remedy." Traxler v. PPG Indus., Inc., ⸻ F. Supp. 3d ⸻, ⸻, 2016 WL 320210, at *3 (N.D. Ohio Jan. 27, 2016).

Although Georgia courts have not articulated specific standards for finding that a limitation or exclusion fails in its essential purpose, Georgia courts have required a showing of multiple attempts to repair a defect in order to sustain a breach of warranty claim.  See, e.g., McDonald, 603 S.E.2d at 460-61 ("It is the refusal to remedy within a reasonable time, or lack of success in the *attempts* to remedy which would constitute a breach of warranty. . . .  Where the manufacturer or dealer has had several opportunities to repair or replace and where the defect remains, such facts create jury questions . . . ." (emphasis added) (alterations and citations omitted)).

Here, the Complaint does not allege that Rheem had several opportunities to cure the defect in Helpling's unit.  The Complaint alleges that Helpling attempted to cure the claimed defect with A/C Renew as instructed, and then obtained a new unit for his customer after the unit vaguely "continued to underperform."  The Complaint does not allege that Helpling notified Rheem that its initial repair attempt was ineffective in order to allow Rheem an opportunity to remedy the alleged defect.  As for Diedrich and Taylor, the Complaint fails to allege that their Rheem Units continued to have any problems after they applied A/C Renew.[6] Where the warranty's remedy—that is, repairing or replacing the defective parts— can fix the alleged defect, the warranty does not fail in its essential purpose.  See Adelman v. Rheem Mfg. Co., 2:15-cv-190 JWS, 2015 WL 4874412, at *2 (D. Ariz. Aug. 14, 2015).  "These allegations exhibit a *functioning warranty that led to repairs*, rather than a warranty that failed to provide Plaintiffs with meaningful recourse whenever their Rheem ACs ceased cooling," and "thus, the essential purpose doctrine does not render the warranty void."  Young v. Carrier Corp., No. 4:14CV0974, 2014 WL 6617650, at *6 (alterations omitted, emphasis in original)

---

[6]   Ohio law provides that, "where a product is inherently defective, the remedy of a replacement product that is equally defective is meaningless."  Traxler, 2016 WL 320210, at *4.  Plaintiffs allege that the TXVs are defective, but they fail to allege that the defect is not or cannot be cured, including by applying A/C Renew.

(quoting <u>Justice v. Rheem Mfg. Co.</u>, No. 9:14-cv-80017-WPD, slip op. at 8 (S.D.

Fla. Aug. 22, 2014) (ECF No. 23.2)).[7]  The Court finds the Warranty does not fail

in its essential purpose.

For similar reasons, the Warranty's limitation of remedies is not

"unconscionable" as a matter of law.  To properly plead that a warranty's

limitation on remedies is unconscionable, Plaintiffs must plead both procedural and

substantive unconscionability.  <u>See</u> <u>Taylor Bldg. Corp. of Am. v. Benfield</u>, 884

N.E. 2d 12, 20 (Ohio 2008); <u>Pendergast v. Spring Nextel Corp.</u>, 592 F.3d 1119,

1134 (11th Cir. 2010); <u>Losapio v. Comcast Corp.</u>, No. 1:10-cv-3438-RWS, 2011

WL 1497652, at *6 (N.D. Ga. Apr. 19, 2011).  The unconscionablility exception is

intended to provide relief from a contractual provision only where "no decent,

fair-minded person would view the ensuing result without being possessed of a

profound sense of injustice."  <u>Golden v. Mobil Oil Corp.</u>, 882 F.2d 490, 493 (11th

---

[7]     Plaintiffs argue that <u>Justice</u> and <u>Adelman</u> do not apply because, in those cases, the plaintiffs alleged that the warranty's remedy of replacing the defective Rheem component fixed the defect.  (Resp. at 22).  Plaintiffs argue that, here, the Complaint does not allege that the warranty program has been effective or cured the defect, because the warranty "offers nothing more than a band aid that may cause long term damage to these expensive HVAC systems."  (<u>Id.</u> at 22-23).  As explained above, the Complaint only vaguely suggests—without alleging—that the use of A/C Renew may cause long-term damage.  As in <u>Young</u>, Plaintiffs here received repairs or replacements and have "made no further warranty claims." 2014 WL 6617650, at *6.

Cir. 1989); see also Mitchell v. Ford Motor Credit Co., 68 F. Supp. 2d 1315, 1319 (N.D. Ga. 1998) ("Georgia courts have described unconscionable contracts as those that no sane man not acting under a delusion would make and that no honest man would take advantage of.").

Plaintiffs argue that the Warranty's limitation of remedies is unconscionable because, despite the fact that Rheem had pre-sale knowledge of the defect, the Warranty does not cover labor or materials costs necessary to repair the defect. (Resp. [15] at 12). First, the Complaint does not allege that Rheem did not cover materials costs. To the contrary, the Complaint alleges that Rheem either provided replacement TXVs or provided A/C Renew to Plaintiffs, and has, additionally, provided rebates covering some labor costs, despite the fact that the Warranty does not require labor costs to be covered.

Second, federal courts in Ohio and Florida, considering the same Warranty at issue here under Ohio and Florida law, respectively, have found that "[t]he warranty requires Rheem to repair or replace any part that fails in its normal use and service. Those terms do not create an outrageous degree of unfairness for purchasers of Rheem ACs." Young, 2014 WL 6617650, at *6 (internal quotation marks, brackets, and ellipsis omitted) (quoting Justice, No. 9:14-cv-80017-WPD,

slip op. at 10).  The Court agrees, and finds the Warranty's limitation of remedies is not unconscionable.[8]

    5. Plaintiffs' Standing Under the Magnuson-Moss Warranty Act ("MMWA") – Count 1

  Rheem next argues that, because all of Plaintiffs' claims for breach of warranty under Georgia, Ohio, and Florida law must be dismissed, Plaintiffs' MMWA claim also fails.  The Court agrees.

  "[E]xcept in the specific instances in which [the MMWA] expressly prescribes a regulating rule, the [MMWA] calls for the application of state written and implied warranty law, not the creation of additional federal law."  Monticello, 369 F. Supp. 2d at 1356 (citing Walsh v. Ford Motor Co., 807 F.2d 1000, 1012 (D.C. Cir. 1986)); see also Ocana, 992 So. 2d at 323-24 ("[T]he question whether a warrantor has committed a breach of a limited express warranty under the [MMWA] is governed by state law.").  "The [MMWA] does not provide an independent cause of action for state law claims, only additional damages for breaches of warranty under state law."  McCabe v. Daimler AG, 948 F. Supp. 2d

---

[8] Rheem submitted supplemental authority in support of its motion to dismiss [22].  Plaintiffs then filed their Motion for Leave to File Response to Defendant's Notice of Supplemental Authority [23] ("Motion for Leave").  Because the supplemental authority addresses the doctrine of unconscionability under Missouri law, the Court does not rely on it in ruling on Rheem's Motion to Dismiss. Plaintiffs' Motion for Leave is thus denied as moot.

1347, 1364 (N.D. Ga. 2013) (quoting <u>Fredrick v. Mercedes-Benz USA, LLC</u>, 366 F. Supp. 2d 1190, 1200 n.14 (N.D. Ga. 2005)).  Thus, where a plaintiff's "state-law warranty claims are dismissed, then their claims under the [MMWA] must be dismissed as well because they are based upon the same allegations."  <u>Id.</u>

Because Plaintiffs' breach of warranty claims under Ohio, Florida, and Georgia law are dismissed, Plaintiffs' MMWA claim also must be dismissed.

B.    <u>Ohio Deceptive Trade Practices Act ("ODTPA") – Count 7</u>

Rheem next seeks dismissal of Plaintiffs' ODTPA claim, arguing that consumers cannot bring claims under the ODTPA and that the statute does not apply to the conduct alleged.

"The Ohio Supreme Court has not yet resolved the issue whether a consumer may pursue a claim under the ODTPA," and federal district courts applying Ohio law are split on the issue.  <u>Terlesky v. Fifth Dimension, Inc.</u>, No. 1:15-cv-374, 2015 WL 7254189, at *2 (S.D. Ohio Nov. 17, 2015); <u>see also</u> <u>Schumacher v. State Auto. Mut. Ins. Co.</u>, 47 F. Supp. 3d 618, 630-33 (S.D. Ohio 2014) (acknowledging split of authority and discussing cases).

The ODTPA confers standing to commence a civil action upon a "person who is likely to be damaged by a person who commits a deceptive trade practice," or a "person who is injured by a person who commits a deceptive trade practice."

O.R.C. § 4165.03(A)(1)-(2).  A "person" is defined under the ODTPA as "an individual, corporation, government, governmental subdivision or agency, business trust, estate, trust, partnership, unincorporated association, limited liability company, two or more of any of the foregoing having a joint or common interest, or any other legal or commercial entity."  O.R.C. § 4165.01(D).

The majority of courts addressing whether a consumer has standing under the ODTPA have noted that the ODTPA is substantially similar to Section 43(a) of the Lanham Act, which similarly confers standing on "any person who believes that he or she is likely to be damaged" by prohibited conduct under 15 U.S.C. § 1125(a).  Terlesky, 2015 WL 7254189, at *2 (citing cases).  These courts reason that, because "the ODTPA is substantially similar to Section 43(a) of the Lanham Act and the Lanham Act protects the interests of a purely commercial class that does not include individual consumers," the ODTPA does not confer standing upon consumers.  Id. (quoting Porsche, 880 F. Supp. 2d at 874).

"An alternative, and minority, school of thought on this position . . . [holds] that the plain language of the ODTPA is not so restrictive to exclude a consumer from bringing a civil action."  Id. at *3 (citing Schumacher, 47 F. Supp. 3d at 632).

The Court follows the majority of Ohio Courts that have addressed this issue and holds that a "consumer" does not have standing to commence a civil action

under the ODTPA.  See Id.; Porsche, 880 F. Supp. 2d at 874; Dawson

v. Blockbuster, Inc., No. 86451, 2006 WL 1061769, at *4 (Ohio Ct. App.

Mar. 16, 2006); see also Robins v. Global Fitness Holdings, LLC, 838 F. Supp. 2d

631, 650 (N.D. Ohio 2012) (holding that, because the OCSPA and ODTPA

regulate the same conduct, "to confer standing on consumers under the [O]DTPA

would render the [O]CSPA superfluous").  Accordingly, Rheem's motion to

dismiss Plaintiffs' ODTPA claim is granted as to the alleged consumer portion of

the Ohio Class.

The Court next addresses whether this same reasoning applies to Helpling

and the contractor class.[9]  Rheem argues that, because the ODTPA is analogous to

the Lanham Act, it applies only to claims of unfair competition, false advertising,

or trademarks, that are inapplicable here.  (See Mot. to Dismiss at 26-27).  Rheem

argues that Helpling does not allege that he is in competition with Rheem, and his

claims therefore must be dismissed.

In support of its argument that the ODTPA does not apply to Helpling,

Rheem relies on Bergmoser v. Smart Document Solutions, LLC, 268 F. App'x 392

---

[9]    Rheem argues that both Helpling and Diedrich's claims under the ODTPA must be dismissed.  Diedrich, however, does not assert a claim under the ODTPA. Plaintiffs bring their ODTPA claim only on behalf of "Helpling and the Ohio Class."  (Compl. ¶ 111).

(6th Cir. 2008).  In <u>Bergmoser</u>, the Sixth Circuit noted, in passing, that the ODTPA "deals with misrepresentations regarding corporate affiliations and does not pertain to other types of misrepresentation claims."  268 F. App'x at 396.  <u>Bergmoser</u>, however, involved very different facts, and did not analyze the issue in any depth. The Court also is unable to find any cases following or supporting the reasoning in <u>Bergmoser</u>.[10]  The parties do not present, and the Court is unable to find, any binding Ohio authority holding that the ODTPA applies exclusively in the "corporate affiliation" context, or that contractors like Helpling do not have standing under the ODTPA.

As noted above, Ohio Courts recognize that the ODTPA "is substantially similar to the federal Lanham Act, and it generally regulates trademarks, unfair competition, and false advertising."  <u>Dawson</u>, 2006 WL 1061769, at *3.  In the absence of controlling authority, the Court looks to interpretations of standing under the Lanham Act for guidance.  <u>See</u> <u>Terlesky</u>, 2015 WL 7254189, at *2 (citing cases comparing ODTPA to Lanham Act to determine standing under the

---

[10]     In reaching its holding, the <u>Bergmoser</u> court relied only on <u>Leventhal & Assoc., Inc. v. Thomson Cent. Ohio</u>, 714 N.E.2d 418 (Ohio Ct. App. 1998), an Ohio case that predates much of the development in case law on standing under the ODTPA.  The <u>Leventhal</u> court analyzed the ODTPA in the context of trademark-type claims that are not at issue here.  Because <u>Leventhal</u> does not apply to the facts of this case, the Court finds the <u>Bergmoser</u> court's reasoning also does not apply here.  The Court notes also that the <u>Bergmoser</u> opinion is unpublished.

ODTPA).  "[S]tanding to assert a [Lanham Act] claim is limited to a 'purely

commercial class of plaintiffs.'"  Stayart v. Yahoo! Inc., 623 F.3d 436, 439 (7th

Cir. 2010) (citing Berni v. Int'l Gourmet Rests. of Am., 838 F.2d 642, 648 (2d Cir.

1988)).  Thus, a reasonable jury must be able to conclude from the facts in the

record that plaintiff has a "commercial interest to protect."  Id.; see also Maremont

v. Susan Fredman Design Grp., Ltd., No. 10 C 7811, 2014 WL 812401, at *4 (N.D.

Ill. Mar. 3, 2014) (finding plaintiff had a "commercial interest to protect" where

she created Twitter and Facebook accounts for her own economic benefit).

Here, Helpling has pled that, because labor is not covered under the

Warranty, he is "forced to replace the TXV at [his] own expense, or else risk

serious reputational detriment to [his] business."  (Compl. ¶ 7).  Helpling incurred

expenses in fixing allegedly defective Rheem Units.  (Id. ¶¶ 26).  Plaintiffs have

adequately pled that Helpling, a contractor who services and installs Rheem Units,

has commercial interests that he seeks to protect.  The Court thus finds that

Helpling has standing to sue under the ODTPA.

The Court also finds the plain language of the ODTPA extends to the

conduct alleged here.  Plaintiffs adequately allege that Rheem represented its

HVAC systems had "characteristics . . . that they do not have" and that they were

"of a particular standard, quality, or grade," but were, in fact, "of another."  O.R.C.

§ 4165.02(A)(7) and (9).  Helpling and the Ohio contractor class have commercial interests to protect with respect to Rheem, and Rheem's motion to dismiss Helpling's claims under the ODTPA is denied.

      C.    <u>Ohio Consumer Sales Practices Act ("OCSPA"), Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and Georgia Uniform Deceptive Trade Practices Act ("GUDTPA") – Counts 8, 11, and 14</u>

Rheem next argues that Plaintiffs' OCSPA, FDUTPA, and GUDTPA claims must be dismissed because the Complaint does not allege legal causation.

Plaintiffs identify the following alleged misrepresentations or omissions common to their OCSPA, FDUTPA, and GUDTPA claims:

> 13.  Rheem became aware of these widespread TXV failures in new HVAC equipment as early as 2013, but failed to disclose these known issues to consumers or contractors.  Had Rheem disclosed the defect prior to sale, consumers and contractors alike would never have incurred these substantial costs.
>
> …
>
> 22.  At all times relevant to the matters raised herein, Rheem represented that: "All Rheem products meet or exceed rigorous industry and regulatory standards for quality, reliability, efficiency, and air & water quality.  From design and fabrication to finished product assembly, each phase in the manufacturing process is rigorously monitored and measured to ensure the highest quality, durability and operating excellence."  Further, Rheem assured consumers, "We simply offer a line of the finest heating and cooling solutions in the business. Top quality products with the latest technology, dependable performance, great warranties and excellent service and support."

…

> 53.  . . . [E]ven after th[e] precise cause of the defect was discovered, Rheem continued to manufacture and sell defective units without warning contractors or consumers in order to use up existing inventory in its pipeline.

(Resp. at 31 (quoting Compl ¶¶ 13, 22, 53)).

### 1.   Ohio Consumer Sales Practices Act ("OCSPA") – Count 8

The OCSPA provides that "[no] supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction."  O.R.C. § 1345.02(A).  Plaintiffs bringing OCSPA claims must allege that the defendant performed an act or omission that was unfair or deceptive, and that the alleged act "impacted the plaintiffs' decision to purchase the item at issue."  Porsche, 880 F. Supp. 2d at 868 (alterations omitted).  "[W]here the defendant is alleged to have made material misrepresentations or misstatements, there must be a cause and effect relationship between the defendant's acts and the plaintiff's injuries."  Savett, 2012 WL 3780451, at *6 (quoting Lilly v. Hewlett-Packard Co., No. 1:05-cv-465, 2006 WL 1064063, at *5 (S.D. Ohio April 21, 2006) (finding that plaintiff failed to state a claim under the OCSPA where the complaint did not allege that plaintiff saw or was even aware of the alleged misrepresentations)).

Plaintiffs fail to allege that any misrepresentations or omissions by Rheem impacted Helpling's decision to purchase a Rheem Unit.[11]  Helpling's OCPSA claim is thus required to be dismissed.  See Porsche, 880 F. Supp. 2d at 868; Savett, 2012 WL 3780451, at *5 ("The Court finds that plaintiff's failure to allege that any connection between his decision to purchase the washer and either the ENERGY STAR logo or an advertisement is fatal to his claim.").

As to Plaintiffs' class action claim under the OCPSA, Plaintiffs bringing such claims are subject to the OCPSA's class action notice requirement.  O.R.C. § 1345.09(B); Porsche, 880 F. Supp. 2d at 868.  "To bring a claim on behalf of a putative class, a plaintiff must identify in his or her complaint the rule or case that satisfies Section 1345.09(B)'s notice requirement."  Porsche, 880 F. Supp. 2d at 868.  Section 1345.09(B) provides that a claim may be asserted on behalf of a class only:

> Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 of the Revised Code . . . .

---

[11]    It also is unclear whether Helpling has standing to assert a claim under the OCPSA, because he is not a consumer.  The Court is not aware of any legal authority permitting a third-party contractor to assert claims under the OCPSA.

O.R.C. § 1345.09(B).  "If a plaintiff fails to identify a rule or case in his or her complaint that satisfies Section 1345.09(B), dismissal of the claim as a class action is proper and the plaintiff may proceed in his or her individual capacity alone." Porsche, 880 F. Supp. 2d at 868.

Rheem argues that Plaintiffs fail to allege that any purported conduct by Rheem has been declared "deceptive or unconscionable" by an Ohio administrative rule or court decision, or that Rheem engaged in "substantially similar" conduct to an act or practice that has been declared "deceptive or unconscionable."  (Mot. to Dismiss at 32).  Plaintiffs argue they were not required to comply with this requirement, because the Supreme Court's decision in Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393 (2010) requires that Federal Rule of Civil Procedure 23 preempts the requirements of O.R.C. § 1345.09(B).  (Resp. at 34).

In Shady Grove, the Supreme Court split 4-1-4, and no single rationale garnered five votes.  Justice Scalia authored a plurality opinion for four justices. Justice Stevens concurred separately.  Four justices dissented.  Every court that has addressed whether Rule 23 displaces the OCPSA's notice requirement has applied Justice Stevens' concurrence in Shady Grove, and has found the OCPSA's notice requirement predominates.  See, e.g. Phillips v. Philip Morris Cos. Inc., 290 F.R.D.

476, 481-82 (N.D. Ohio 2013) (applying Justice Stevens's concurrence in Shady Grove, and "conclud[ing] that the notice provision in § 1345.09(B) is so 'intertwined' with state substantive rights that it serves to define the scope of the rights afforded under the [O]CSPA"); McKinney v. Bayer Corp., 744 F. Supp. 2d 733, 747-749 (N.D. Ohio 2010) (applying Justice Stevens's concurrence in Shady Grove, and finding that "Rule 23 does not preempt O.R.C. § 1345.09").

Plaintiffs argue that the Court is required instead to take the approach articulated by the Eleventh Circuit in Lisk v. Lumbar One Wood Preserving, LLC, 792 F.3d 1331 (11th Cir. 2015).  In Lisk, the Eleventh Circuit reversed the district court's dismissal of a putative class action under the Alabama Deceptive Trade Practices Act ("ADTPA"), reasoning that the "Alabama statute restricting class actions, like the New York statute at issue in Shady Grove, does not apply in federal court.  Rule 23 controls."  Id. at 1333.  In reaching this conclusion, the Court declined to decide whether courts are required to apply Justice Scalia's plurality opinion or Justice Stevens's concurrence in Shady Grove.  The Court reasoned, instead, that "all five justices [in Shady Grove] agreed that applying Rule 23 to allow a class action for a statutory penalty created by New York law did not abridge, enlarge, or modify a substantive right; Rule 23 controlled."  Id. at 1335.

The Court relied on this holding in coming to its conclusion, and its analysis relies on the holding.

The Eleventh Circuit compared the New York statute at issue in <u>Shady Grove</u> with the ADTPA, finding that:

> There is no relevant, meaningful distinction between a statutorily created penalty of the kind at issue in <u>Shady Grove</u>, on the one hand, and a statutorily created claim for deceptive practices of the kind at issue here, on the other hand.  Each is a creature of state law.  For each, state law allows an injured person to seek redress in an individual action but precludes the person from maintaining a class action.  The state's purpose in precluding class actions . . . is essentially the same—to allow individual redress but to preclude class recoveries that, in the legislature's view, may go too far.

<u>Id.</u> at 1335-36.  The Court further reasoned that the New York statute in <u>Shady Grove</u> precluded statutory-penalty class actions altogether, whereas the ADTPA:

> [A]llows class actions so long as they are brought by the Attorney General or a district attorney.  If Rule 23 did not abridge, enlarge, or modify a substantive right under the New York statute, even though the statute precluded class actions altogether, it is difficult to conclude that Rule 23 abridges, enlarges, or modifies a substantive right in Alabama, when all the statute does is prescribe who can bring a class claim based on the very same substantive conduct.

<u>Id.</u> at 1336.

The OCPSA, however, is quite different than both the New York statute at issue in <u>Shady Grove</u> and the ADTPA at issue in <u>Lisk</u>.  Unlike the New York statute and the ADTPA, Section 1345.09(B) of the OCPSA does not prescribe who

may bring a cause of action or what type of action they may bring, rather it defines when "a consumer has a cause of action and is entitled to relief" in the first place. O.R.C. § 1345.09.  Thus, the holding of <u>Shady Grove</u>, as construed by the Eleventh Circuit in <u>Lisk</u>, does not help in analyzing whether Rule 23 preempts Section 1345.09(B), and the Court finds that <u>Lisk</u> is not controlling on this issue.  Further, the Eleventh Circuit in <u>Lisk</u> specifically declined to decide whether Justice Scalia's plurality opinion or Justice Stevens's concurrence in <u>Shady Grove</u> is binding, deciding to "[l]eav[e] this issue unresolved." <u>Lisk</u>, 792 F.3d at 1337.[12]

The Court thus lacks controlling authority as to (i) whether the holding of <u>Shady Grove</u> requires that Rule 23 preempts O.R.C. § 1345.09(B); and (ii) whether Justice Scalia's plurality opinion or Justice Stevens's concurrence controls our analysis.  In the absence of controlling authority, the Court finds persuasive the approaches taken—and conclusions reached—by every court that has addressed whether Rule 23 preempts O.R.C. § 1345.09(B).  "[A] clear majority of courts have applied Stevens's narrower holding as the controlling opinion for use in determining whether a federal rule may displace a conflicting state law." <u>Phillips</u>, 290 F.R.D. at 479-80 (citing cases).  "Employing Justice Stevens's 'intertwined'

---

[12]     The Eleventh Circuit noted that it has "taken as many as three different approaches . . . when confronting other fragmented Supreme Court decisions." <u>Lisk</u>, 792 F.3d at 1337.

test, every court to reach the question has concluded that the [O]CSPA's notice requirement is not displaced by Fed. R. Civ. P. 23." Id. at 480; Leonard v. Abbott Labs. Inc., No. 10-cv-4676(ADS)(WDW), 2012 WL 764199, at *13 (E.D.N.Y. Mar. 5, 2012); McKinney., 744 F. Supp. 2d at 747-49; Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., Case No. 1:08-WP-65000, 2010 WL 2756947, at *2 (N.D. Ohio July 12, 2010); see also Pattie v. Coach, Inc., 29 F. Supp. 3d 1051, 1055-57 (N.D. Ohio 2014) (applying, without specific reference to Shady Grove, Section 1345.09(B) requirements to class action claim under OCSPA); Gascho v. Global Fitness Holdings, LLC, 863 F. Supp. 2d 677, 693 (S.D. Ohio 2012) (same).

The Court finds that Rule 23 does not preempt O.R.C. § 1345.09(B), and thus Plaintiffs were required to comply with the requirements of Section 1345.09(B) in their Complaint.  Plaintiffs failed to do so, and their class claims under the OSCPA are dismissed.  See Porsche, 880 F. Supp. 2d at 868.

### 2.   Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") – Count 11

Rheem argues that Plaintiffs' FDUTPA claim also must be dismissed because Plaintiffs failed to plead causation.  Under the FDUTPA, a party must plead (1) a deceptive or unfair practice; (2) causation; and (3) actual damages. Third Party Verification, Inc. v. Signaturelink, Inc., 492 F. Supp. 2d 1314, 1326

(M.D. Fla. 2007).  Florida law regarding the causation requirement is not settled.

See In re Sears, Roebuck & Co. Tools Mktg. and Sales Practices Litig., Nos. 05 C

4742, 05 C 4744, 2012 WL 1015806, at *7-10 (N.D. Ill. Mar. 22, 2012) (reviewing

Florida case law).  The Eleventh Circuit has noted that, to prove the causation

element of a FDUTPA claim, "a plaintiff need not prove reliance on the allegedly

false statement . . . but rather a plaintiff must simply prove that an objectively

reasonable person would have been deceived."  Fitzpatrick v. Gen. Mills, Inc., 635

F.3d 1279, 1283 (11th Cir. 2011).  On the other hand, many Florida courts have

come out the other way, and require that plaintiffs present individualized proof to

satisfy the FDUTPA's causation element.  In re Glaceau Vitaminwater Mktg. &

Sales Practice Litig., No. 11-cv-925 (DLI)(RML), 2013 WL 3490349, at *7

(E.D.N.Y. July 10, 2013) (collecting cases).

The Court is required to ascertain Florida law, and must apply the FDUTPA

as we believe the Florida Supreme Court would apply it.  See West v. AT&T, 311

U.S. 223, 236-37 (1940).  In performing this analysis, the Court finds persuasive

the reasoning of the Northern District of Illinois in Sears.  The Sears court, after a

thorough review of federal and state cases interpreting the FDUTPA, noted that,

while the Florida Supreme Court has not weighed in on the causation requirement

of an FDUTPA claim, Florida appellate courts have done so.  2012 WL 1015806,

at *10.  The <u>Sears</u> court observed that the "great weight of recent authority in those courts . . . holds that causation typically requires individualized proof," and concluded that "[t]he Florida Supreme Court would take the same approach as recent Florida appellate court decisions and require a plaintiff to show that the alleged misrepresentation actually caused him harm."  <u>Id.</u>  The Court agrees.  <u>See</u> Fla. Stat. § 501.211(2) (A "person who has suffered a loss *as a result of* a violation of this part . . . may recover actual damages." (emphasis added)).

The Court finds that the Complaint fails to allege that Diedrich or any member of the Florida Class was injured as a direct result of any purported misrepresentation or omission by Rheem.[13]  <u>See</u> <u>Lombardo v. Johnson & Johnson Consumer Cos., Inc.</u>, ⸺ F. Supp. 3d ⸺, ⸺, 2015 WL 5025466, at *5 (S.D. Fla. Aug. 12, 2015) ("Still, causation is a necessary element of the FDUTPA claim, and causation must be direct, rather than remote or speculative." (internal quotation marks omitted)).  Count 11 is thus required to be dismissed.

---

[13]   The Complaint alleges certain misrepresentations or omissions, and alleges some injury to Diedrich, but fails to link the two.  For any of Rheem's misrepresentations or omissions to have caused injury to Diedrich—a third-party contractor who did not purchase a Rheem Unit—would require a tenuous chain of "facts" that Plaintiffs have not pled.

3.      Georgia Uniform Deceptive Trade Practices Act ("GUDTPA")
          – Count 14

Under the GUDTPA, the only relief available is injunctive relief.

Catrett v. Landmark Dodge, Inc., 560 S.E.2d 101, 106 (Ga. Ct. App. 2002); see

also O.C.G.A. § 10-1-373(a) ("A person likely to be damaged by a deceptive trade

practice of another may be granted an injunction against it under the principles of

equity and on terms that the court considers reasonable.  Proof of monetary

damage, loss of profits, or intent to deceive is not required.").  "To have standing

to seek injunctive relief under the [G]UDTPA, a plaintiff must show . . . that she is

likely to be damaged in the future by some deceptive trade practice of the

defendant."  Bolinger v. First Multiple Listing Serv., Inc., 838 F. Supp. 2d 1340,

1364 (N.D. Ga.2012) (internal quotations omitted); see also Willingham v. Global

Payments, Inc., No. 1:12-cv-1157-RWS, 2013 WL 440702, at *16 (N.D. Ga. Feb.

5, 2013) (plaintiffs must plead that they "read, relied upon, and thus, were harmed"

by the alleged misrepresentations).  "A plaintiff who demonstrates past harm, but

does not allege ongoing or future harm, has not shown that he is likely to be

damaged within the meaning of section 10-1-373(a)."  Silverstein v. Procter &

Gamble Mfg. Co., No. CV 108–003, 2008 WL 4889677, at *4 (S.D. Ga. Nov. 12,

2008) (internal quotations omitted).

Here, even assuming Taylor has established past harm, the Complaint does

44

not allege that Taylor or any class member—that is, persons or entities who purchased Rheem Units and contractors servicing Rheem Units—"is likely to be damaged in the future by some deceptive trade practice of [Rheem]." Bolinger, 838 F. Supp. 2d at 1364.  As explained above in Section III.A.1., the Complaint contains only the vaguest suggestions that A/C Renew may cause some future damage.  The Complaint does not—nor could it—contain any allegations as to how Rheem's representations might cause damage in the future to consumers who have already purchased Rheem Units.  Even if Plaintiffs alleged some future harm, Rheem's misrepresentations or omissions would not have caused those future harms to Taylor or any class member.[14]  Plaintiffs' GUDTPA claim is dismissed.

D.    Negligence and Negligent Failure to Warn – Counts 3 and 4

Rheem next argues that Plaintiffs' claims for negligence and negligent failure to warn are barred by Georgia's economic loss rule.[15]

---

[14]    The Court notes also that the Eleventh Circuit has recognized the GUDTPA is "co-extensive" with the Lanham Act.  Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1248 n.11 (11th Cir.2007).  "[S]tanding to assert a [Lanham Act] claim is limited to a 'purely commercial class of plaintiffs.'"  Stayart v. Yahoo! Inc., 623 F.3d 436, 439 (7th Cir. 2010) (citing Berni v. Int'l Gourmet Res. Of Am., 838 F.2d 642, 648 (2d Cir. 1988)).  Though Georgia courts have not addressed the issue, it is at least questionable whether Taylor, as a consumer, has standing to bring suit under the GUDTPA.

[15]    Plaintiffs assert their negligence claims and their unjust enrichment claim on behalf of a nationwide class "under Georgia law."  (Compl. ¶¶ 32, 81, 89, 95).

Georgia's economic loss rule "generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort.  Under the economic loss rule, a plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property."  Gen. Elec. Co. v. Lowe's Home Ctrs., Inc., 608 S.E.2d 636, 637 (Ga. 2005).

Plaintiffs argue that their negligence claims fall under the "misrepresentation exception" to the economic loss rule.  (Resp. at 36).  This exception holds:

> [O]ne who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly.

City of Cairo v. Hightower Consulting Eng'rs, Inc., 629 S.E.2d 518, 525 (Ga. Ct. App. 2006).

Rheem argues that Plaintiffs cannot rely on the misrepresentation exception because "Plaintiffs' allegations fall far short of pleading that Rheem made any actionable misrepresentation regarding the Rheem Units or their TXVs, much less that Plaintiffs relied on such representation."  (Reply [19] at 18-19 (ECF

---

Rheem asserts, and Plaintiffs do not dispute, that the Court must apply Georgia law.

pagination)).  The Court agrees.  The misrepresentation exception applies to hold

liable those "who suppl[y] information . . . *to parties who rely upon the*

*information*."  Cairo, 629 S.E.2d at 525 (emphasis added); see also Holloman v.

D.R. Horton, Inc., 524 S.E.2d 790, 796 (Ga. Ct. App. 1999) (noting that, in

adopting the misrepresentation exception, the Georgia Supreme Court approved

the language of the Restatement of Torts, 2d, § 552 (1997), which provides, in

pertinent part, that "[o]ne who, in the course of his business . . . supplies false

information for the guidance of others . . . is subject to liability for pecuniary loss

caused by their *justifiable reliance upon the information*." (emphasis added)).  As

explained above, Plaintiffs have not alleged that Diedrich, Taylor, or Helpling—or

any putative class member—relied on any alleged misrepresentation or omission.

Plaintiffs' negligence claims are therefore required to be dismissed.

   Rheem next argues that Plaintiffs' claim for negligent failure to warn

(Count 3) independently fails because Plaintiffs did not plead the requisite duty to

warn.  (Mot. to Dismiss at 36).  Plaintiffs concede that their negligent failure to

warn claim is insufficiently pled, and seek the Court's leave to amend, claiming

that they intended to cast their claim as one for "Negligent Misrepresentation."

(Resp. at 37).  First, an opposition to a motion to dismiss is not the proper vehicle

to seek leave to amend a complaint.  Second, even if Plaintiffs' request were properly before the Court, the Court would deny leave to amend.

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend pleadings] when justice so requires."  Thus, generally, a district court should afford a plaintiff at least one opportunity to amend a complaint in order to correct deficiencies.  Langlois v. Traveler's Ins. Co., 401 F. App'x 425, 426 (11th Cir. 2010) (citing Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005)).  "Ordinarily, if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, leave to amend should be freely given."  Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1262 (11th Cir. 2004) (quotations and citations omitted).

Here, the underlying facts relied upon are not a proper subject of relief under a theory of negligent misrepresentation.  According to Plaintiffs, negligent misrepresentation requires:  "(1) the negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance."  (Resp. at 37 (quoting Squish La Fish v. Thomco Specialty Prods., 149 F.3d 1288, 1291 (11th Cir. 1998))).  As explained above, the Complaint fails to show that any plaintiff relied upon any misrepresentation.  Thus, even if

Plaintiffs' request for leave to amend were properly before the Court, the Court would deny Plaintiffs' request.[16]

E.     Unjust Enrichment – Count 4

Rheem next seeks dismissal of Plaintiffs' unjust enrichment claim. "Plaintiffs bring this claim on behalf of the contractor Class Members who diagnosed and/or repaired Rheem HVAC systems for sticking TXVs who were not paid their full labor costs."  (Compl. ¶ 95).

Unjust enrichment is an equitable concept that applies when there is no actual legal contract, but where there has been a benefit conferred for which there deserves to be some compensation given to the party delivering the benefit.  Renee Unlimited, Inc. v. City of Atlanta, 687 S.E.2d 233, 238 (Ga. Ct. App. 2009).  To state a claim for unjust enrichment under Georgia law, Plaintiffs must plead that (1) Plaintiffs conferred a benefit on Rheem, (2) Rheem has knowledge of the benefit; (3) Rheem accepted or retained the benefit conferred; and (4) it would be inequitable for Rheem to retain the benefit without paying for it.  Jenkins v. BAC

---

[16]     Plaintiffs also seek leave to amend their Complaint in the event the Court grants Rheem's Motion to Dismiss as to any claim other than Count 3.  (Resp. at 40).  If Plaintiffs seek leave to amend, the Court will consider any motion to amend when it is properly before the Court.  If Plaintiffs seek to amend, they should consider the observations of the Court.  Plaintiffs' current complaint asserts an undisciplined, scattershot set of claims, some of which, at least, are perilously close to violating Rule 11 of the Federal Rules of Civil Procedure.

Home Loan Serv., LP, 822 F. Supp. 2d 1369, 1377 (M.D. Ga. 2011) (citing

Baptista v. JPMorgan Chase Bank, N.A., 640 F.3d 1194, 1198 n.3 (11th Cir.

2011)).

 The Court finds that Plaintiffs fail to adequately plead that any Plaintiffs

conferred a benefit on Rheem.  Plaintiffs argue that contractors, "who conferred a

benefit on Rheem by purchasing and re-selling [Rheem Units], were forced to

confer yet another benefit on Rheem by repairing them."  (Resp. at 39).  The

Complaint, however, lacks any allegation that contractors purchased or re-sold

Rheem Units.  Further, the Complaint fails to allege that any contractors "were

forced to" repair Rheem Units, or how their repairs would confer a benefit on

*Rheem* rather than on customers.

 Plaintiffs allege:

> Contractors conferred a tangible economic benefit upon Rheem by
> absorbing the labor costs not covered by Rheem's warranty but
> necessary to diagnose and attempt to fix the stuck TXVs.  Contractors
> would not have originally installed the Rheem HVAC systems in
> consumer's [sic] homes if they knew that there would be follow-up
> repairs for which they could not bill the customer.

(Compl. ¶ 96.  The Complaint also alleges that Diedrich "felt it was bad business

to charge [customers] for his labor and needed materials," (id. ¶ 27), and that

Helpling similarly "refused to charge his customer for his labor related to this

manufacturing defect," (id. ¶ 26).  These allegations show that the contractors,

according to their own business judgment, did not charge customers for labor, thereby voluntarily conferring a benefit on their customers, not on Rheem.  Any benefit conferred on Rheem in this scenario is tangential, and was given voluntarily, and without any allegation that Rheem was aware of the "benefit."  This argument assumes also that Rheem, rather than the customer, is required to bear the costs of labor.

Based on Plaintiffs' allegations, they have not stated a claim for unjust enrichment, and this claim is dismissed.

F.    Punitive Damages and Litigation Expenses – Counts 5 and 6

Finally, Rheem seeks to dismiss Plaintiffs' claims for punitive damages and litigation expenses under O.C.G.A. § 51-12-5.1 and O.C.G.A. § 13-6-11.  Rheem argues that these claims fail as a matter of law because Plaintiffs' substantive claims on which these claims are based also fail.  (Mot. to Dismiss at 39).  The Court has found, however, that Helpling's claim under the ODTPA survives.[17]

Rheem argues that Plaintiffs' punitive damages and litigation expenses claims independently fail because Plaintiffs do not plead adequate factual

---

[17]    Because all of Taylor's and Diedrich's substantive claims are dismissed, their claims for punitive damages and expenses of litigation under Georgia law also fail.  See Freeman v. Wheeler, 627 S.E.2d 86, 90 (Ga. Ct. App. 2006).  Taylor and Diedrich thus are dismissed from this action.

allegations to support them.  (Id.).  To state a claim for punitive damages, Plaintiffs must plead that Rheem's "actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."  COMCAST Corp. v. Warren, 650 S.E.2d 307, 311 (Ga. Ct. App. 2007) (citing O.C.G.A. § 51-12-5.1(b)).  Georgia law requires a claim for attorneys' fees to be supported by facts showing that "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense . . . ."  O.C.G.A. § 13-6-11.  "Bad faith warranting an award of attorney fees must have arisen out of the transaction on which the cause of action is predicated . . . ."  Metro. Atlanta Rapid Transit Auth. v. Morris, 779 S.E.2d 726, 731 (Ga. Ct. App. 2015).

Here, Plaintiffs allege Rheem engaged in "willful" misconduct by "[r]epresenting that its HVAC systems are of a particular standard, quality, or grade" and "advertising goods or services with intent not to sell them as advertised."  (Compl. ¶¶ 110, 111).  "Whether Plaintiffs are entitled to litigation expenses and punitive damages depends on the mind set and culpability of Defendants, which present questions of fact for a jury."  Alliant Tax Cred. Fund, 31-A, Ltd. v. Murphy, No. 1:11-cv-832-RWS, 2014 WL 3955642, at *12 (N.D. Ga. Aug. 12, 2014) (citing Miller v. City Views at Rosa Burney park GP, LLC,

746 S.E.2d 710, 716 (Ga. Ct. App. 2013)).  Assuming the factual allegations in the Complaint are true, and giving Plaintiffs the benefit of reasonable factual inferences, Rheem's motion to dismiss Plaintiffs' claims for litigation expenses and punitive damages is, at this stage of the litigation, required to be denied. Because Helpling's claim under the ODTPA is the only claim that survives, Plaintiffs' claims for litigation expenses and punitive damages would only be available for this claim if this claim is proved.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Rheem Manufacturing Company's Motion to Dismiss Class Action Complaint [14] is **GRANTED IN PART** and **DENIED IN PART**.  Rheem's motion is **DENIED** on Plaintiff Michael Helpling's claims under the Ohio Deceptive Trade Practices Act, O.R.C. § 4165.01, et seq., punitive damages under O.C.G.A. § 51-12-5.1, and expenses of litigation under O.C.G.A. § 13-6-11.  Rheem's motion is **GRANTED** on Plaintiffs' remaining claims.

**IT IS FURTHER ORDERED** that Plaintiffs Jeffrey Taylor and Ryan Diedrich are **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Response to Defendant's Notice of Supplemental Authority [23] is **DENIED AS MOOT**.

**SO ORDERED** this 23rd day of March, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE